UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____
CASE NO. 15-1448

MICHELLE MAMMARO

Plaintiff-Appellee,

v.

NEW JERSEY DIVISION OF CHILD PROTECTION & PERMANENCY, et al.,

Defendants-Appellants.

On Appeal from the
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY,
TRENTON VICINAGE
No. 3-13-cv-06483 (Hon. Freda L. Wolfson, U.S.D.J)

PLAINTIFF-APPELLEE'S BRIEF

KENNETH ROSELLINI, ATTORNEY AT LAW
636A Van Houten Avenue
Clifton, New Jersey 07013
(973) 998-8375 Fax (973) 998-8376
KennethRosellini@Gmail.Com

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE BASIS FOR APPELLATE JURISDICTION . . . . **1**

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

   I.  The Appellants' Appeal of Denial of a Rule 12(b)(6) Motion
      to Dismiss is not Properly Before the Third Circuit Court of
      Appeals Because the Appellants' Appeal is Based Solely Upon
      Disputed Issues of Fact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   **12**

   II. The Appellee has Articulated a Violation of a Clearly
       Established Constitutional Right to Overcome Qualified
       Immunity on a Rule 12(b)(6) Motion to Dismiss . . . . . . . . . . . . . . **20**

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **31**

CERTIFICATE OF BAR MEMBERSHIP . . . . . . . . . . . . . . . . . . . . . . . . . . **31**

Certificate of Compliance with F.R.A.P. 32(a) and L.A.R. 31.1 . . . . . . . . . **32**

CERTIFICATION OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **32**

i

# TABLE OF AUTHORITIES

**CASES**                                         **PAGE**

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) . . . . . . . . . . . . . . . . . . . .10

*Barton v. Curtis*, 497 F.3d 331, 336 (3d Cir. 2007) . . . . . . . . . . . . . 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 583 (2007) . . . . . . . . . . . 10

*Croft v. Westmoreland Cnty. CYS,* 103 F.3d 1123,
1125 (3d Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 20, 25, 28

*Doe v. Groody*, 361 F.3d 232, 237-38 (3d Cir. 2004) . . . . . . . . . . . . .18

*Doe v. Heck*, 327 F.3d 492, 520-25 (7th Cir. 2003) . . . . . . . . . . . . . .20, 22

*Good v. Dauphin Cnty. Soc. Servs. for Children & Youth*, 891 F.2d
1087, 1095 (3d Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 29

*Johnson v. Jones*, 515 U.S. 304, 319-20 (1995) . . . . . . . . . . . . . . .. 18

*Malik v. Arapahoe Cnty. Dep't of Soc. Servs.*, 191 F.3d 1306,
1316 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. 30

*McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 858 (2010) . . . . . . .23

*Meyer v. Nebraska*, 262 U.S. 390, 399-400 (1923) . . .. . . . . . . .. . . . .23, 26

*Miller v. City of Philadelphia*, 174 F.3d 368 (3d Cir. 1999) . . . . . . . 20, 25, 28

*Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) . . . . . . . . . . . . . . . . . .18

*Montanez v. Sec'y Pa. Dep't of Corr.*, 763 F.3d 257, 265
(3d Cir. 2014) . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . .. 9-10

*Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006). . . . . 18

*New Jersey Dep't of Children & Families, Div. of Youth &*

*Family Servs. v. I.S.*, 214 N.J. 8, 36-37, 66 A.3d 1271, 1288 *cert. denied sub nom. I.S. v. New Jersey Dep't of Children & Families, Div. of Youth & Family Servs.*, 134 S. Ct. 529 (2013) . . . . . . . . . . . .. 28

*Newland v. Reehorst,* 328 F. App'x 788, 791 n. 3 (3d Cir.2009) . . . . . 19

*Olmstead v. United States*, 277 U.S. 438, 478 (1928) . . . . . . . . . . . . 23

*Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 535 (1925) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Prince v. Massachusetts*, 321 U.S. 158 (1944) . . . . . . .. . . . . . . . .. 25

*In re Montgomery County*, 215 F.3d 367, 373-74 (3d Cir. 2000) . . . . .18

*Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir.2008) . . . . 10

*Roberson v. Torres*, 770 F.3d 398, 402-03 (6th Cir. 2014) . . . . . . . . .19

*Rogers v. Cnty. of San Joaquin*, 487 F.3d 1288, 1294-95 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Spotts v. United States*, 613 F.3d 559, 565 (5th Cir. 2010). . . . . . . . . 9

*Stanley v. Illinois*, 405 U.S. 645, 666 (1972) . . . . . . . . . . . . . . . . .. ..26

*Thomas v. Independence Twp.,* 463 F.3d 285, 289 (3d Cir.2006) . . . .19

*Troxel v. Granville*, 530 U.S. 57, 80 (2000) . . . . . . . . . . . . . . . . . . . .13, 21-22

*United States v. Lanier*, 520 U.S. 259, 271 (1997) . . .. . . . . . . . . . . 29

*Weaver v. Marling*, 2:12-CV-1777, 2013 WL 4040472 (W.D. Pa. Aug. 8, 2013) . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . .. .. 21

*Whisman Through Whisman v. Rinehart*, 119 F.3d 1303, 1313 (8th Cir. 1997) . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

**RULES, STATUTES AND CONSTITUTION**                                    **PAGE**

First Amendment
to the Constitution for the United States of America . . . . . . . . . . . . .30

Fourth Amendment
to the Constitution for the United States of America . . . . . . . . . . . . .1, 22-23, 25

Fourteenth
Amendments to the United States Constitution . . . . . . . .. . . . . . .  1, 12, 20, 23, 25

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2, 11-12, 17-18

28 *U.S.C.* §1331 . . . . . . .. . . .. . .. . . . . .. . . . . .. . . . .. . . . . . . . . . .. 1

42 *U.S.C.* §1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2, 10, 30

*F.R.C.P.* 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 9

## STATEMENT AS TO APPELLATE JURISDICTION

Appellee, Michelle Mammaro, filed a Complaint in the United States District Court for the District of New Jersey, alleging, *inter alia*, that the Appellants deprived her of her Civil Rights as a parent in violation of 42 U.S.C. §1983.  Appellee invoked jurisdiction in the District Court pursuant to 28 *U.S.C.* §1331, which confers original jurisdiction upon the District Court on the grounds that the instant action arises under *inter alia* the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, the Civil Rights Act of 1871, as amended, 42 *U.S.C.* §§1981, 1983, 1985, 1986 and 1988.

By Order dated January 16, 2015 the District Court denied that part of the Appellants' motion to dismiss pursuant to *F.R.C.P.* 12(b)(6) which asserted that Plaintiff-Appellee failed to state a claim based on a Qualified Immunity Defense, arguing that the Complaint does not state a claim that the Appellants violated clearly established Constitutional Rights.  The Appellants filed a Notice of Appeal with the District Court on February 17, 2015 and have asserted that the Order is appealable as a final decision within the meaning of 28 U.S.C. §1291 under the collateral order doctrine.   The Constitutional Right that is the subject of the appeal, the Fundamental Constitutional Right of a Parent to be Free from investigation by the State into the parent-child relationship absent reasonable and articulable evidence of imminent or actual abuse, however, is a clearly established

1

Constitutional Right.  The issues which the Appellants raise on this appeal are issues of fact for which there is no appellate jurisdiction at this stage of the proceedings.

## STATEMENT OF ISSUES

1) Is the January 16, 2015 Order denying Appellants' Motion to Dismiss Appellee's Civil Rights Complaint based on Qualified Immunity a Final Appealable Decision within the meaning of 28 U.S.C. §1291 when the Fundamental Constitutional at issue, the Right of a Parent to be Free from investigation by the State into the parent-child relationship absent reasonable and articulable evidence of imminent or actual abuse, has been a Clearly Established Constitutional Right since before the Un-Constitutional conduct alleged began to occur in the year 2011, and the issues raised on this appeal are issues of fact concerning the basis of the decision-making of state child protective service caseworkers?

2) Are state child protective services caseworkers entitled to Qualified Immunity from liability for a Civil Rights Complaint pursuant to 42 U.S.C. §1983 which alleges that the caseworkers violated Plaintiff-Appellee's Clearly Established Constitutional Rights as a Parent from July 2011 through June 2012 when they engaged in purposeful bad faith retaliatory ministerial conduct against the Plaintiff-Appellee in response to Plaintiff-Appellee's assertion of her due

2

process rights to parent her child without state interference—including allegations that the caseworkers forcefully removed her child from her custody and care without a warrant or a court order when there was no reasonable and articulable evidence of imminent or actual abuse to the child?

## STATEMENT OF THE CASE

The Appellants are state child protective services caseworkers that acted under color of state law and engaged in purposeful bad faith retaliatory ministerial conduct against the Plaintiff-Appellee Michelle Mammaro in response to her assertion of due process rights to parent her child without state interference— including the forceful removal of her child from her custody and care, without a warrant or a court order, when there was no reasonable and articulable evidence substantial evidence of imminent or actual abuse to her child. Plaintiff-Appellee Michelle Mammaro has never abused her child nor placed her child in imminent danger of abuse. (A36, ¶¶21-22).

On July 22, 2011, Ms. Mammaro was for the first time the victim of a violent assault by her husband while she was caring for her then one-year old child, D.M., in their apartment in New Jersey. (A36-A37, ¶¶19-24). D.M. was not harmed during the assault and Ms. Mammaro took every action that day to ensure D.M. was not harmed. (A37, ¶25-27). Ms. Mammaro's husband was charged by the local police with several indictable offenses in connection with the assault.

(A37, ¶28).   Caseworkers with the New Jersey Division of Child Protection & Permanency, including the Appellants, immediately began investigating Ms. Mammaro's husband regarding the circumstances surrounding the assault and interviewed her while she was at the hospital being treated for her wounds from the assault.  (A37, ¶¶30-31).  Ms. Mammaro agreed to have her child be in the care of her brother-in-law for one night while she recovered from the assault.  (A38, ¶32). During this one night, when she did was not acting as a caretaker for her daughter, Ms. Mammaro admittedly smoked a small amount of marijuana to self-medicate for the stress and anxiety from the assault—the only use of marijuana or any other non-prescription drug by Ms. Mammaro during the relevant time period.  (A39, ¶¶46-48, 50).  On July 26, 2011, an Appellant caseworker went to the home of Ms. Mammaro and questioned her about what happened during the assault.    (A38, ¶33).

Having recovered from the initial shock of the assault by her husband, Ms. Mammaro immediately took steps to protect her and her daughter from any further assaults by her husband by seeking and obtaining a Final Restraining Order against him.  (A38, ¶¶36-40, 58).  Instead of supporting Ms. Mammaro in seeking a restraining order against her husband, the Appellant caseworkers attended the restraining order proceedings un-invited, used un-credible testimony of Ms. Mammaro's husband at the restraining order hearings against her, and pressured

Ms. Mammaro to lift the restraining order against her husband after she obtained it. (A38, ¶¶37-45, 58-59).

Without advising Ms. Mammaro of her rights, the Appellant caseworkers interrogated her while she was attending the restraining order hearings and coerced her into submitting to drug testing by threatening to involuntarily remove her child from her care if she did not submit. (A38, ¶37). Ms. Mammaro was informed that someone had made hearsay allegations against her, but was provided no details of the hearsay allegations and was not advised that she could have an attorney, (A38, ¶¶41-42). Ms. Mammaro submitted to a drug screen and tested positive for a small amount of marijuana on July 28, 2011 and August 4, 2011, with the latter test showing a lower level, and all subsequent tests showing negative for drug use. (A39, ¶¶47-50). Appellant caseworkers admitted under oath in New Jersey Superior Court that these two screens were not a basis to bring allegations of abuse or neglect against Ms. Mammaro. (A44, ¶87). DCP&P pursued a Complaint of abuse and neglect against Ms. Mammaro, nevertheless, and obtained temporary guardianship over her child (with physical custody remaining with Ms. Mammaro, although supervised at all times)—based solely on un-credible statements made by Ms. Mammaro's husband during the restraining order hearing and to Appellant caseworkers while he was on tranquilizers, while he was in a county jail cell awaiting a hearing in connection with the assault charges against him. (A44, ¶88).

Ms. Mammaro fought the Appellants' allegations that she abused and neglected her daughter and obtained a New Jersey Superior Court decision on June 27, 2012 which found that she had not abused or neglected her child.  (A45, ¶90).

Because Ms. Mammaro refused to stipulate in August of 2011 that she had abused or neglected her child and pursued her due process rights, the Appellant caseworkers engaged in a nearly year-long campaign of retaliatory conduct against Ms. Mammaro.  The Appellants continued to pursue the abuse and neglect Complaint against Ms. Mammaro even after they had determined that the allegations against her were not credible and those persons who had made allegations against her had already admitted that they made them solely for leverage against Ms. Mammaro in her family law matters concerning her daughter and later divorce from her husband.  (A40, ¶¶51-56, 65).

Despite knowledge that Ms. Mammaro had not abused or neglected her child, the Appellant caseworkers (in Warren County) used these false allegations as a basis to force Ms. Mammaro to relocate to temporary safe-house, which she herself found in Somerset County.  (A41, ¶67).  Ms. Mammaro was forced to stay at this safe-house for an extended period of time because the Appellant caseworkers intentionally delayed their approval of the residential households that Ms. Mammaro submitted as appropriate for her and her child to live.  (A41, ¶¶66-67).  The Appellant caseworkers continued to withhold their approval of the

6

proposed households despite the fact that living in a safe-house environment was having a very negative effect on Ms. Mammaro's child. (A42, ¶68). While Ms. Mammaro was forced to live in this environment, Appellant caseworkers not only urged her to give up her fight against the charges of abuse and neglect against her, while knowing there was no competent substantive evidence of abuse or neglect, the caseworkers on multiple occasions demanded that she give up custody of her child. (A45, ¶91). The Appellant caseworkers also refused to reschedule random drug screening, knowing that the times chosen for random drug screens would cause Ms. Mammaro to miss an appointment with social services to keep benefits, benefits which she lost because she missed the appointment. (A41, ¶¶61-63). The Appellant caseworkers continued to make allegations against Ms. Mammaro that she was "doctor shopping" for prescription drugs, even though they knew that Ms. Mammaro only had one doctor for several years. (A40, ¶40). While engaging in this retaliatory conduct against Ms. Mammaro, the Appellant caseworkers told Ms. Mammaro that she couldn't legally do anything to stop their conduct because they were "immune". (A45, ¶97).

At the end of October 2011, Ms. Mammaro's approved time at the safe-house was coming to an end, yet the Appellant caseworkers, knowing this, refused to return her communications to them requesting assistance, continued to refuse to approve the proposed households that Ms. Mammaro had submitted to them, and

failed to find alternative housing for Ms. Mammaro. (A42, ¶¶70-71). Ms. Mammaro, with no alternative, left the safe-house and moved with her child into a household that she had previously asked for approval for by the Appellants, and which was finally approved by the Appellant caseworkers when Ms. Mammaro complained about their conduct to the Superior Court. (A42, ¶¶71, 73).

Knowing that Ms. Mammaro had no choice but to leave the safe-house, the Appellant caseworkers (who had previously demanded that Ms. Mammaro give up custody of her child and told her that they were immune from an legal action she could bring against them) forcibly removed Ms. Mammaro's child from her custody and care on October 28, 2011. (A42-A42, ¶¶72-74). At this time, Ms. Mammaro had already come up negative for all illicit drugs on drug screens taken, including screens on August 22, 2011, September 13, 2011, September 27, 2011 (and later on a hair follicle test with a ninety-day look back period on November 21, 2011, DCP&P fraudulently asserted that this test was positive for "drug use", but testimony at trial proved that it was not even positive at the "level of detection"). (A43, ¶50, ¶¶ 76-86). At this time, Ms. Mammaro had already passed every substance abuse evaluation that the Appellant caseworkers had subject her to. (A44, ¶87). The "emergency removal" of Ms. Mammaro's child, therefore, had no legitimate purpose, was done without any substantive evidence of imminent or actual child abuse, and was done solely as retaliation for Ms. Mammaro's

8

pursue of her due process rights and refusal to stipulate to DCP&P's allegations against her of abuse and neglect of her child.  Ms. Mammaro regained custody of her child after a hearing in New Jersey Superior Court.  (A42, ¶¶71, 73).

After having been cleared by the Superior Court of New Jersey in June of 2012 of the fabricated allegations of child abuse which the Appellants made against her, Ms. Mammaro filed a Civil Rights Complaint against the Appellants on October 28, 2013.  In the Complaint the Appellee asserts, *inter alia*, that the Appellants participated in a practice of Un-Constitutional conduct to maximize short term financial gains from the federal government by shattering loving families in order to create new foster families that are funded by the federal government, and to secure federal funding at the expense of those vulnerable children and families.  (A46, ¶¶100, 101).

## STANDARD OF REVIEW

United States Courts of Appeals review *de novo* a district court's decision concerning the application of Qualified Immunity as a basis to dismiss a complaint. *See Montanez v. Sec'y Pa. Dep't of Corr.*, 763 F.3d 257, 265 (3d Cir. 2014); *see also Spotts v. United States*, 613 F.3d 559, 565 (5th Cir. 2010).  The Appellants' assertion of Qualified Immunity was made under their Rule 12(b)(6) portion of their motion to dismiss, and the District Court analyzed it as such.  A Complaint

9

will not be dismissed on a F.R.C.P. 12(b)(6) motion where the Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The reviewing court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *See Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir.2008). The question before the Court is, "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 583 (2007). The District Court properly reviewed the Appellants Rule 12(b)(6) Motion for Dismissal based on Qualified Immunity, and properly denied the motion.

United States Courts of Appeals also review *de novo* "an argument alleging a lack of appellate jurisdiction." *See Montanez v. Thompson*, 603 F.3d 243, 248 (3d Cir. 2010).

## SUMMARY OF ARGUMENT

The District Court correctly denied the Appellants' motion to dismiss the Appellee's Civil Rights Complaint based on Qualified Immunity. The Appellant state child protective services caseworkers were not entitled to Qualified Immunity from liability for Appellee's Civil Rights Complaint pursuant to 42 U.S.C. §1983, which alleges that the caseworkers violated Plaintiff-Appellee's Clearly

10

Established Fundamental Constitutional Rights as a Parent from July 2011 through June 2012 when they engaged in purposeful bad faith retaliatory ministerial conduct against her in response to Appellee's assertion of her due process rights to parent her child without state interference—including allegations that the caseworkers forcefully removed her child from her custody and care without a warrant or a court order when there was no reasonable and articulable evidence of imminent or actual abuse to the child.

In addition, the January 16, 2015 Order denying Appellants' Motion to Dismiss Appellee's Civil Rights Complaint based on Qualified Immunity is not a Final Appealable Decision within the meaning of 28 U.S.C. §1291. The Fundamental Constitutional at issue, the Right of a Parent to be Free from investigation by the State into the parent-child relationship absent substantive evidence of imminent or actual abuse, has been a clearly established Constitutional Right since before the Un-Constitutional conduct alleged began to occur in the year 2011, and the issues raised on this appeal are issues of fact concerning the basis of the decision-making of state child protective service caseworkers—issues which are not proper for appellate review at this stage in the proceedings.

**LEGAL ARGUMENT**

**I. The Appellants' Appeal of Denial of a Rule 12(b)(6) Motion to Dismiss is not Properly Before the Third Circuit Court of Appeals Because the Appellants' Appeal is Based Solely Upon Disputed Issues of Fact**

The District Court's Order denying the Appellants' Rule 12(b)(6) Motion to Dismiss on Qualified Immunity grounds is not appealable pursuant to 28 U.S.C. §1291 because the Defendants-Appellants' appeal is based on disputed issues of fact which must be determined by way of discovery, and not an issue of law concerning whether there is a clearly established right.  The clearly established right under the Constitution in this case is the Plaintiff-Appellee's fundamental right, under the Fourteenth Amendment to the Constitution for the United States of America, that persons are free from unlawful investigations and removal of children from parents by state agencies because  "**a state has no interest in protecting children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse**." *See Croft v. Westmoreland Cnty. CYS,* 103 F.3d 1123, 1125 (3d Cir.1997) (emphasis added).  The Defendants-Appellants do not dispute this as a clearly established Constitutional Right, rather they argue that it is "vague", "amorphous", "nebulous", "penumbral" when balanced against the states "*parens patriae* interest in protecting children." (*See* page 25 of the Appellants' Brief).  In fact, it is the Appellants' assertion of a

12

"*parens patriae* interest in protecting children" which is vague, amorphous and nebulous, and for which there is no clearly established state authority that has been narrowly tailored to further a compelling state interest. *See Troxel v. Granville*, 530 U.S. 57, 80 (2000) (plurality recognized the Fundamental Constitutional Right of "parents to direct the upbringing of their children", and in his concurrence, Justice Clarence Thomas asserted the standard of review of state action should "strict scrutiny").

What the Appellants have asserted in their appeal is a factual argument which is contrary to the factual assertions in the Complaint. Appellants completely ignore the factual allegations in the Complaint that they engaged in Un-Constitutional retaliatory conduct against the Plaintiff-Appellee for asserting her due process rights from July of 2011 through June of 2012, and instead focus entirely on the Un-Constitutional removal of Ms. Mammaro's child from her custody in October of 2011 without any substantive evidence of imminent or actual abuse of her child. Also completely absent from the Appellants' argument is what the basis was for the Appellant caseworkers' decision that Ms. Mammaro's child was in danger of imminent abuse. As set forth in the Complaint, the Appellee never abused or neglected her child, and the Appellants never alleged that Ms. Mammaro abused her child. Therefore, the only basis upon which the Appellants

13

could have acted to remove Ms. Mammaro's child would have been due to a reasonable good faith belief that her child was in imminent danger of being abused.

The Appellants cite three alleged basis under which they believed an emergent removal of the child was necessary on October 28, 2011. As Appellants characterize it, they made their decision to remove the child based on "objective evidence known to appellants – multiple, recent positive tests for substance abuse; a recent hospitalization as a result of domestic violence caused by appellee's husband while appellee was caring for her child; and a violation of a supervised contact restriction by unilaterally moving with her child to an unapproved home." *See* Appellants Brief at page 19.    This basis is not only contrary to the well pled allegations of the Complaint, it is not plausible. It is also completely devoid of any analysis as to how there was a reasonable belief of "imminent" danger of abuse.

First, the Appellants refer to "multiple, recent positive tests for substance abuse." In fact, there were only two positive drug screens for low level marijuana, one on July 28, 2011 and the other on August 4, 2011. Appellant caseworkers admitted under oath in New Jersey Superior Court that these two screens were not a basis to bring allegations of abuse or neglect against Ms. Mammaro. This was for marijuana use which Ms. Mammaro admitted she had used a small amount of to self-medicate for stress and anxiety resulting from the assault on July 22, 2011. By October 28, 2011, Ms. Mammaro had already come up negative for all illicit

14

drugs on drug screens taken, including screens on August 22, 2011, September 13, 2011, September 27, 2011 and had already passed every substance abuse evaluation that the Appellant caseworkers had subject her to.    Appellant caseworkers knew that two positive drug screens for small amounts of marijuana were not a proper basis for bringing a Complaint for abuse or neglect within days of those screens.  Clearly Appellants knew that two minor drug screens for small amounts of marijuana which were nearly three months old, coupled with three more recent negative screens and the passing of a substance abuse evaluation, could not be a basis for an imminent removal of Ms. Mammaro's child.

Second, Appellants assert that "a recent hospitalization as a result of domestic violence caused by appellee's husband while appellee was caring for her child" was a basis for the emergent removal.  The hospitalization was not recent, but was three months prior to the emergent removal.  It was the first time which Ms. Mammaro had been assaulted in that manner by her husband, and she ensured that her daughter was not harmed during the incident.    Ms. Mammaro then immediately took steps to obtain a Final Restraining Order against her husband to ensure it did not happen again.  In stark contrast, the Appellants actually urged Ms. Mammaro to lift the Final Restraining Order prior to the emergent removal.  There was in fact no imminent threat of violence against Ms. Mammaro because she was keeping the Final Restraining Order in place.  The Appellants were in fact so

completely unconcerned about imminent violence by her husband that they had previously urged her to lift the restraining order. The July hospitalization, therefore, was no basis at all for an emergent removal of Ms. Mammaro's child from her custody in October of 2011.

Third, Appellants assert that "a violation of a supervised contact restriction by unilaterally moving with her child to an unapproved home" by Ms. Mammaro was the final basis for the emergent removal. In fact, the Appellants knew weeks in advance that Ms. Mammaro would have to leave the safe-house at the end of October, they refused to respond to Ms. Mammaro's pleas for assistance, and they unconscionably delayed approval of a household for Ms. Mammaro to reside at, which was approved immediately after Ms. Mammaro complained to the Superior Court during the emergent removal hearing. This alleged basis for forcefully removing Ms. Mammaro's child, therefore, was completely fabricated by the Appellants as the Appellant caseworkers knew Ms. Mammaro was leaving the safe-house with her child and took no action to remove the child until well after she left the safe-house, to move to a household which the Appellants could have and should have approved weeks earlier.

Finally, the Appellants do not even attempt to explain why, under the circumstances set forth in the Complaint, they did not have time to obtain a warrant or a court order prior to the emergent removal of the child.

16

> Officials, including social workers, who remove a child from its home without a warrant must have reasonable cause to believe that the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant. *Mabe,* 237 F.3d at 1108. Serious allegations of abuse that have been investigated and corroborated usually give rise to a "reasonable inference of imminent danger sufficient to justify taking children into temporary custody" if they might again be beaten or molested *1295 during the time it would take to get a warrant. *Ram v. Rubin,* 118 F.3d 1306, 1311 (9th Cir.1997). **However, an official's prior willingness to leave the children in their home militates against a finding of exigency, as does information that the abuse occurs only on certain dates or at certain times of day.** *Mabe,* 237 F.3d at 1108; *Wallis,* 202 F.3d at 1140.

*See Rogers v. Cnty. of San Joaquin*, 487 F.3d 1288, 1294-95 (9th Cir. 2007) (emphasis added).   It is clear, therefore, that the arguments under which the Appellants assert Qualified Immunity are based on a dispute of fact which either ignores or greatly distorts many of the material facts asserted in the Complaint.

The issue which the Appellants have presented on their appeal, therefore, is not whether the clearly established Constitutional Right set forth in District Court's Opinion is a correct standard of law, but whether or not the Plaintiff-Appellee's Complaint established that the Defendants-Appellants violated this clearly established right based on their dispute of the factual assertions in the Complaint. This type of appeal is, in fact, fact based, and not an appropriate matter to be reviewed as a final order under 28 U.S.C. §1291.

The Third Circuit Court of Appeals may review a denial of a motion to dismiss or other pretrial motion (such as one for summary judgment) as a final

order under 28 U.S.C. §1291 based on a Qualified Immunity Defense only if the issue under review is one of law.

> [A] district court's denial of a claim of qualified immunity, **to the extent that it turns on an issue of law**, is an appealable "final decision" within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment.

*See Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S. Ct. 2806, 2817, 86 L. Ed. 2d 411 (1985) (emphasis added); *see also Johnson v. Jones*, 515 U.S. 304, 319-20, 115 S. Ct. 2151, 2159, 132 L. Ed. 2d 238 (1995) ("a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial");   *See Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006) ("Although qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury."); *Barton v. Curtis*, 497 F.3d 331, 336 (3d Cir. 2007).

When the pre-trial motion on appeal is a denial of summary judgment, the appellate court may review Qualified Immunity as an issue of law based on an evaluation of the "undisputed facts" as an "objective inquiry, to be decided by the court as a matter of law".  *See Doe v. Groody*, 361 F.3d 232, 237-38 (3d Cir. 2004); *see also In re Montgomery County*, 215 F.3d 367, 373-74 (3d Cir. 2000)

(denying an appeal on Qualified Immunity grounds at the summary judgment stage where the court could not "consider whether the plaintiff has produced sufficient evidence to prove his allegations".)

The Order appealed from in the within case is an Order denying a Motion to Dismiss, and Qualified Immunity appellate review should be exercised sparingly at this stage in the proceedings. The Third Circuit has held that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *See Newland v. Reehorst,* 328 F. App'x 788, 791 n. 3 (3d Cir.2009). A "plaintiff has no pleading burden to anticipate or overcome a qualified immunity defense, and a mere absence of detailed factual allegations supporting a plaintiff's claim for relief under § 1983 does not warrant dismissal of the complaint or establish defendants' immunity." *See Thomas v. Independence Twp.,* 463 F.3d 285, 289 (3d Cir.2006). While *Thomas v. Independence Twp.* was decided prior to *Twombly* or *Plumhoff v. Rickard,* 134 S. Ct. 2012, 2021 (2014), it is consistent with the acknowledged and still accepted precedent of *Johnson v. Jones,* 515 U.S. 304, 115 S. Ct. 2151, 132 L. Ed. 2d 238 (1995) that "interlocutory appeals of qualified immunity matters" should be limited "to cases presenting more abstract issues of law" and "that appellate courts should not engage, on interlocutory appeal, with issues concerning "the existence, or nonexistence, of a triable issue of fact,'" *See Roberson v.*

*Torres*, 770 F.3d 398, 402-03 (6th Cir. 2014) (citing *Johnson v. Jones*, 515 U.S. 304).

The issues presented by the Defendants-Appellants, for the aforementioned reasons, do not warrant a review of the Third Circuit at this stage in the proceedings because the issue presented requires a pre-discovery factual analysis of a Constitutional claim based on a clearly established right, and not an appellate review of whether, as an abstract matter of law, such a right exists.

## II. The Appellee has Articulated a Violation of a Clearly Established Constitutional Right to Overcome Qualified Immunity on a Rule 12(b)(6) Motion to Dismiss

The clearly established right under the Constitution in this case is the Plaintiff-Appellee's Fundamental Constitutional Right, under the Fourteenth Amendment to the Constitution for the United States of America, that persons are free from unlawful investigations and removal of children from parents by state agencies, where there is "no reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse". *See Croft v. Westmoreland Cnty. CYS,* 103 F.3d 1123, 1125 (3d Cir.1997); *see also Miller v. City of Philadelphia*, 174 F.3d 368 (3d Cir. 1999); *Doe v. Heck*, 327 F.3d 492, 520-25 (7th Cir. 2003), *as amended on denial of reh'g (May 15,*

20

2003). While the District Court in the within matter cited *Weaver v. Marling*, 2:12-CV-1777, 2013 WL 4040472 (W.D. Pa. Aug. 8, 2013) in denying the Appellants' motion, *Weaver* was based upon the foundation of clearly established Constitutional Law set forth in *Croft* and *Miller*.

As set forth *supra*, the Defendants-Appellants had no objective reasonable good faith basis to believe that there existed substantive evidence of actual or imminent abuse to Ms. Mammaro's child when they conducting an emergent removal of Ms. Mammaro's child from her care without a warrant or court order. As set forth *supra*, Defendants-Appellants do not dispute the clearly established Constitutional Right set forth in *Croft*, rather they argue that it is "vague", "amorphous", "nebulous", "penumbral" when balanced against the states "*parens patriae* interest in protecting children." (*See* page 25 of the Appellants' Brief). In fact, it is the Appellants' assertion of a "*parens patriae* interest in protecting children" which is vague, amorphous and nebulous, and for which there is no narrowly tailored or established state authority that has been narrowly tailored to further a compelling state interest. *See Troxel v. Granville*, 530 U.S. 57, 80 (2000) (plurality recognized the Fundamental Constitutional Right of "parents to direct the upbringing of their children", and in his concurrence, Justice Clarence Thomas asserted the standard of review of state action should be "strict scrutiny").

It is the Fundamental Constitutional Right of parents in the familial integrity of the parent-child relationship that has been clearly established with a presumption that the parents are fit. *See Doe v. Heck*, 327 F.3d 492, 520-25 (7th Cir. 2003), *as amended on denial of reh'g* (May 15, 2003) (citing *Troxel*, 530 U.S. at 68). This recognition of the rights of parents in children has its foundations in the traditions of the People of the United States of America dating back to the Declaration of Independence. In his dissenting opinion in *Troxel*, Justice Scalia recognized this.

> a right of parents to direct the upbringing of their children is among the "unalienable Rights" with which the Declaration of Independence proclaims "all men ... are endowed by their Creator." And in my view that right is also among the "othe[r] [rights] retained by the people" which the Ninth Amendment says the Constitution's enumeration of rights "shall not be construed to deny or disparage."

*See Troxel v. Granville*, 530 U.S. 57, 91, 120 S. Ct. 2054, 2074, 147 L. Ed. 2d 49 (2000). These traditions have been recognized by the United States Supreme Court to be part of Fourth Amendment jurisprudence.

> The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness. They recognized the significance of man's spiritual nature, of his feelings and of his intellect. They knew that only a part of the pain, pleasure and satisfactions of life are to be found in material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. **They conferred, as against the government, the right to be let alone-the most comprehensive of rights and the right most valued by civilized men. To protect, that right, every unjustifiable intrusion by the government upon the privacy of the individual,**

**whatever the means employed, must be deemed a violation of the Fourth Amendment**.

*See Olmstead v. United States*, 277 U.S. 438, 478, 48 S. Ct. 564, 572, 72 L. Ed. 944 (1928) (Emphasis added). It is respectfully submitted that that the right of parents to direct the upbringing of their children is a Constitutional Right under the Privileges or Immunities Clause of the Fourteenth Amendment as part of the preservation of liberty for which that amendment was adopted. *Cf. McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 858, 130 S. Ct. 3020, 3088, 177 L. Ed. 2d 894 (2010) (Justice Clarence Thomas Concurring Opinion finding the Right to Bear Arms was essential to the preservation of liberty under the Privileges or Immunities Clause).

The Fundamental Constitutional Rights of parents was recognized by the United States Supreme Court under the Fourteenth Amendment in the 1920s. "**The child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations**." *See Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 535, 45 S. Ct. 571, 573, 69 L. Ed. 1070 (1925) (emphasis added); *Meyer v. Nebraska*, 262 U.S. 390, 399-400, 43 S. Ct. 625, 626, 67 L. Ed. 1042 (1923) (the Fourteenth Amendment includes the right of the individual to "establish a home and bring up children . . . .") ("**this liberty**

**may not be interfered with, under the guise of protecting the public interest**")

(emphasis added).  Many Courts have also recognized a Fourth Amendment right

to the child to be free from being seized by a child protective services worker

absent a evidence giving rise to a reasonable suspicion that a child has been abused

or is in imminent danger of abuse.

> **It is true that the pre-April 1987 caselaw applying these principles specifically in the context of a warrantless invasion of a home based on an alleged need to prevent child abuse is relatively sparse. In this context, Hooper and Sweigart suggest that they were entitled to assume until told otherwise by the courts that child abuse cases would not be controlled by the well established legal principles developed in the context of residential intrusions motivated by less pressing concerns. We reject this suggestion. As we have noted, *Anderson* teaches that a prior case on all fours is not necessary; a public official may not manufacture immunity by inventing exceptions to well settled doctrines for which the case law provides no support. It evidences no lack of concern for the victims of child abuse or lack of respect for the problems associated with its prevention to observe that child abuse is not sui generis in this context**. . . .

It is next necessary to consider whether, assuming Ms. Good did not

consent, the searches were nonetheless justified by an emergency situation.

On Ms. Good's version of the facts a trier of fact could properly conclude

that the information available to Hooper and Sweigart could not have led a

reasonable law enforcement officer to conclude that Jochebed was in

immediate and grave peril when they approached the Good's residence. In

fact, we do not understand Hooper and Sweigart to contend otherwise. A

single anonymous report had indicated only that Jochebed, on a single

occasion, "had bruises on her body" of unspecified severity. Moreover,

Hooper and Sweigart saw and heard nothing during their conversation with

Ms. Good at the open door that hinted in any way that Jochebed was being

mistreated. **This is hardly a rational basis for a state actor to conclude that forced entry into the residence was required to protect Jochebed from imminent harm. This is evident, among other things, from the fact that, at the time of the entry, <u>the responsible authorities had possessed the anonymous tip for at least twenty hours</u>**.

In short, given Ms. Good's sworn version of the facts, a trier of fact could conclude that reasonable persons in the positions of Hooper and Sweigart could not have believed their conduct was lawful. It follows that they were not entitled to summary judgment on qualified immunity grounds.

*See Good v. Dauphin Cnty. Soc. Servs. for Children & Youth*, 891 F.2d 1087, 1095 (3d Cir. 1989) (emphasis added).

Therefore, Constitutional Law as to the rights of parents and children to be free from intrusive investigations by the state without evidence of abuse or imminent abuse has been clearly established under the traditions of the People of the United States going back to its founding, the rights of parents going back to the Fourteenth Amendment recognition of a liberty interest in raising children by the United States Supreme Court in the 1920s, and under the entire history of Fourth Amendment jurisprudence. The clearly established Constitutional Rights articulated in *Croft v. Westmoreland Cnty. CYS,* 103 F.3d 1123, 1125 (3d Cir.1997) and *Miller v. City of Philadelphia*, 174 F.3d 368 (3d Cir. 1999), therefore, were not some vague never-before-known right, but rights which had strong foundations in the history and traditions of the People of the United States.

In contrast, the purported authority of states to assert *parens patriae* authority over the parent-child relationship has been vague and amorphous, with *parens patriae* being first mentioned as a basis for state child labor laws by the United States Supreme Court in *Prince v. Massachusetts*, 321 U.S. 158, 64 S. Ct. 438, 88 L. Ed. 645 (1944), and did not enter into the jurisprudence concerning the liberty interest of parents in their children until the 1970s.

> Centuries of human experience buttress this view of the realities of human conditions and suggest that unwed mothers of illegitimate children are generally more dependable protectors of their children than are unwed fathers. While these, like most generalizations, are not without exceptions, they nevertheless provide a sufficient basis to sustain a statutory classification whose objective is not to penalize unwed parents but to further the welfare of illegitimate children in fulfillment of the State's obligations as ***parens patriae***.

*Cg. Stanley v. Illinois*, 405 U.S. 645, 666, 92 S. Ct. 1208, 1220, 31 L. Ed. 2d 551 (1972) (emphasis added).  In fact, the Appellants in the within case fail to even articulate a standard by which their purported *parens patriae* authority would somehow overcome the Clearly Established Constitutional Rights of the integrity of the family unit of parents and children.  The Appellant caseworkers need to demonstrate to this Court that they had clearly established authority to act as they did towards Ms. Mammaro, but they cannot.  The Appellants assert *parens patriae* as if the mere mention of the phrase demonstrates that their actions were in the best interests of Ms. Mamamaro's child and those actions were *prima facie* a valid

exercise of state authority.  As set forth in *Meyer v. Nebraska*, 262 U.S. 390, 399-400, **a parent's "liberty may not be interfered with, under the guise of protecting the public interest**".  In fact, the State of New Jersey has completely unhinged itself from the Constitution for the United States of America.  Consider the 2013 New Jersey Supreme Court decision in which it was determined, without even a mention of the Constitution or the Fundamental Constitutional Rights of Parents, that the State may interfere with and investigate, and compel involuntary "services" upon, the parent-child family unit without even an allegation or finding of abuse or neglect, or even fault by the parent.

> With *N.J.S.A.* 30:4C–12, the Legislature cut a broader swath than in Title 9. It authorized services to children who have not been abused or neglected, as those terms are defined in *N.J.S.A.* 9:6–8.21(c), but whose needs may be too complex and beyond a parent's or parents' ability to work through without the Division extending minimal supervision, or more intrusive involvement, coupled with services until that is no longer necessary. **Imposing a fault-based finding in respect of a parent or parents would impede the apparent legislative intent to facilitate services to children in need when parental consent is withheld**, a parent is absent, or parental involvement would itself be an impediment to the child's health, safety, or welfare. **The statute instead intends to provide the Division with flexibility when investigating certain categories of referrals of suspected parental unfitness** or other complex situations where the parents are unable to provide a safe and healthy environment for a child.
>
> **Moreover, requiring a predicate, fault-based finding cuts against case law that has considered how Titles 9 and 30 operate independently from one another**. *See M.M., supra,* **189 *N.J.* at 292, 914 *A.*2d 1265 (recognizing that Section 12 action is viable regardless of whether abuse or neglect is established under Title 9**); *T.S., supra,* 426 *N.J.Super.* at 64, 42 *A.*3d 942 (**noting succinctly that "dismissal of a Title 9 action ... does

**not foreclose further intervention by the Division pursuant to *N.J.S.A.***
**30:4C–12 to protect a child who, although not abused or neglected, is in**
**need of services to ensure [his or her] health and safety"**).

**Granted, parental autonomy is diminished if relief is granted to the**
**Division to assist a child through Section 12 because, at the very least, it**
**is the Division and not a parent who will determine with court approval**
**what services will be provided to a child, and where, and how, and**
**when. Through Section 12, however, the Division steps in when a child**
**needs help and parents cannot supply it. Importantly, Section 12 is less**
**damaging to parents in that the child abuse registry, *see N.J.S.A. 9:6–***
**8.11, is not implicated.** Moreover, it is temporary and must periodically be
reviewed. We see no reason to impose a fault-based-finding requirement in
order for the Division to make services available to parents under Section
12.

*See New Jersey Dep't of Children & Families, Div. of Youth & Family Servs. v.*

*I.S.*, 214 N.J. 8, 36-37, 66 A.3d 1271, 1288 *cert. denied sub nom. I.S. v. New*

*Jersey Dep't of Children & Families, Div. of Youth & Family Servs.*, 134 S. Ct. 529

(2013) (emphasis added).

The Appellants assert that there is an "inherent difficulty of finding anything

to be "clearly established" after balancing this vague right against a state's *parens*

*patriae* interest in protecting children." (*See* Appellants' Brief at page 25). The

primary cases which the Appellants cite to support this theory, however, are from

outside this Circuit or predate the *Croft v. Westmoreland Cnty. CYS,* 103 F.3d

1123, 1125 (3d Cir.1997) and *Miller v. City of Philadelphia*, 174 F.3d 368 (3d Cir.

1999), decisions which clearly established the standards under which parents have

a Fundamental Constitutional Right to be free from government interference in the parent-child relationship,  absent substantive evidence of abuse or imminent abuse of the child by the parent.  The Appellants also fail to recognize that a Plaintiff asserting violation of this Constitutional Right does not need to cite a case which is precisely analogous in order to prevail.

> **But general statements of the law are not inherently incapable of giving fair and clear warning**, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though "the very action in question has [not] previously been held unlawful," *Anderson, supra,* at 640, 107 S.Ct., at 3039. **As Judge Daughtrey noted in her dissenting opinion in this case: " 'The easiest cases don't even arise. There has never been ... a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages [or criminal] \*\*1228 liability**.' " 73 F.3d, at 1410 (quoting *K.H. Through Murphy v. Morgan,* 914 F.2d 846, 851 (C.A.7 1990) [**Opinion by Judge Richard Posner**]);

*See United States v. Lanier*, 520 U.S. 259, 271, 117 S. Ct. 1219, 1227-28, 137 L. Ed. 2d 432 (1997) (Emphasis added). In "order for the governing law to be sufficiently well established for immunity to be denied, **it is not necessary that there have been a previous precedent directly in point**." *See Good v. Dauphin Cnty. Soc. Servs. for Children & Youth*, 891 F.2d 1087, 1092 (3d Cir. 1989) (Emphasis added).

What's more, the Appellants fail to address the fact that Ms. Mammaro's claims are also based in allegations of retaliation for her exercising her due process

rights to fight the allegations of abuse and neglect against her. "Officials cannot reasonably assume that the law permits them to obtain a custody order in retaliation for a parent's retaining counsel and through reckless omission of probative facts to a magistrate." *See Malik v. Arapahoe Cnty. Dep't of Soc. Servs.*, 191 F.3d 1306, 1316 (10th Cir. 1999) (cited by Appellants with approval); *cf. Whisman Through Whisman v. Rinehart*, 119 F.3d 1303, 1313 (8th Cir. 1997) ("Government action designed to prevent an individual from utilizing legal remedies may infringe upon the First Amendment right to petition the courts").

**It is in fact the actions of the Appellants in Un-Constitutionally interfering with the family unit of Ms. Mammaro and her daughter which have caused immeasurable and lasting harm to that family**. The Appellants are not entitled to a presumption of Constitutional conduct simply because they invoke so called *parens patriae* authority to which Ms. Mammaro and her daughter never consented and never desired. Appellants cannot assert that their actions were Constitutional, because there was no evidence of abuse or imminent abuse by Michelle Mammaro towards her daughter D.M. Their sole refuge is a false argument that Ms. Mammaro may only pursue a 42 U.S.C. §1983 claim against them if she can point to a previously decided case with facts nearly identical to hers. This is not the standard. Therefore, the fact that the Appellants violated clearly established Fundamental Constitutional Rights as a matter of law by

30

investigating and then removing Ms. Mammaro's child without reasonable and articulable evidence of imminent or actual abuse, is undeniable.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that the District Court's Order appealed from be affirmed, and the matter be remanded to the District Court for further proceedings.

Dated: June 3, 2015                     Respectfully Submitted,

/s/ Kenneth Rosellini

_____  _____

KENNETH ROSELLINI

## CERTIFICATE OF BAR MEMBERSHIP

The undersigned hereby certifies pursuant to the Third Circuit Local Appellate Rule 46.1 that the attorney whose name appears on the foregoing Appellate Brief, Kenneth Rosellini, is a member of the bar of this Court.

Dated: June 3, 2015                     /s/ Kenneth Rosellini

KENNETH ROSELLINI

**Certificate of Compliance with F.R.A.P. 32(a) and L.A.R. 31.1**

This brief complies with the word limit requirements of F.R.A.P. 32(a)

because:

a. This brief is 8,794 words, prepared in Times New Roman, 14 Point Font.  This

brief complies with the electronic filing requirements of L.A.R. 31.1(c) because:

a. The text of this electronic brief is identical to the text of the paper

copies.

b. Symantec Anti-Virus 10.0 has been run on the file containing the

electronic version of this brief and no viruses have been detected.

Dated: June 3, 2015              /s/ Kenneth Rosellini

                                 KENNETH ROSELLINI


**CERTIFICATION OF SERVICE**

I, Kenneth Rosellini, swear under pain and penalty of perjury, that according

to law and being over the age of 18, upon by oath depose and say that the parties to

this appeal through their counsel are registered via electronic filing to receive the

brief in this matter if electronically filed, and that this brief is being filed via that

method on this date.

Dated: June 4, 2015                     /s/ Kenneth Rosellini

                                        KENNETH ROSELLINI